# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR ESPINOZA and MARIBEL GUARDADO,<br><br>                                 Plaintiffs,<br>vs.<br><br>RECONTRUST COMPANY, N.A.; COUNTRYWIDE HOME LOANS INC., a California Corporation; DITECH HOME FINANCING; GREENLIGHT FINANCIAL SERVICES, a California Corporation; GMAC MORTGAGE, LLC, a California Limited Liability Company; and DOES 1-20,<br><br>                                 Defendants. | CASE NO. 09-CV-1687 - IEG (RBB)<br><br>ORDER:<br><br>(1) GRANTING IN PART MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [Doc. No. 18]; and<br><br>(2) DENYING AS MOOT MOTION TO DISMISS [Doc. No. 12]. |

      Currently before the Court are Defendants Ditech Home Financing and GMAC Mortgage, LLC's (together, "Moving Defendants") Motion to Dismiss First Amended Complaint ("Motion to Dismiss"), [Doc. No. 12], and Plaintiffs' Motion for Leave to File a Second Amended Complaint (Motion to Amend). [Doc. No. 18]. Having considered the parties' arguments, and for the reasons set forth below, the Court **GRANTS IN PART** the Motion for Leave to File a Second Amended Complaint and **DENIES AS MOOT** the Motion to Dismiss.

## BACKGROUND

      Plaintiffs Oscar Espinoza and Maribel Guardado are owners of certain real property commonly

1  known as 1427 RIVERVIEW AVE., EL CENTRO, CA 92243 ("Property"). On February 28, 2006,
2  Plaintiffs purchased the Property with the financing obtained from Defendants. Plaintiffs borrowed
3  $318,200 for the first mortgage from Defendant Greenlight Financial Services ("Greenlight") and
4  $79,500 for the concurrent second mortgage from Defendant GMAC Mortgage, LLC ("GMAC").[1]
5  (FAC ¶ 9; Motion to Amend, at 2-3.) Plaintiffs allege Defendant Countrywide Home Loans
6  ("Countrywide") is the current servicer of the first loan and Defendant Ditech Home Financing
7  ("Ditech") is the current servicer of the second loan. (FAC ¶ 11; Motion to Amend, at 3.)

Plaintiffs subsequently had difficulties making payments on the mortgages, and on July 24, 2009, received a Notice of Trustee's Sale from Defendant Recontrust Company, setting a trustee's sale of the Property for August 14, 2009. On August 5, 2009, Plaintiffs commenced the present action, alleging eighteen causes of action against Defendants. [Doc. No. 1]. The Moving Defendants then filed a Motion to Dismiss Complaint pursuant to Rule 12(b)(6). [Doc. No. 5]. However, before the Court could rule on the motion, Plaintiffs filed their First Amended Complaint ("FAC"), alleging fifteen causes of action. [Doc. No. 9]. In light of the FAC, the Court denied as moot the Motion to Dismiss. [Doc. No. 11]. Defendants immediately filed the present Motion to Dismiss. [Doc. No. 12]. Plaintiffs filed a late opposition and also a Motion to Amend. After both motions have been fully briefed, the Court took them under submission.

**LEGAL STANDARD**

**I.  Motion to Amend**

Fed. R. Civ. P. 15(a) allows a party to amend its pleading with leave of court after the period for amendment as a matter of course has expired. See FED. R. CIV. P. 15(a)(2). Pursuant to Rule 15(a), "[t]he court should freely give leave when justice so requires." Id. The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (noting "the strong policy permitting amendment" (citation

---

[1] Such back-to-back loans are commonly referred to as "piggyback" loans because the second loan is typically taken out either to cover the value of the home in excess of the first loan, and/or to cover the down payment requirement of the first loan. See, e.g., In re Ambac Fin. Group, Inc. Sec. Litig., — F. Supp. 2d —, 2010 WL 727227, at *5 & n.11 (S.D. N.Y. 2010); In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1150 (C.D. Cal. 2008).

omitted)). This broad discretion "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (citing Conley v. Gibson, 355 U.S. 41, 47-48 (1957)).

The Supreme Court has articulated five factors that the court should consider in deciding whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the party has previously amended its pleadings. Forman v. Davis, 371 U.S. 178, 182 (1962); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003). Not all factors merit equal weight, however. Eminence Capital, 316 F.3d at 1052. "Prejudice is the 'touchstone of the inquiry under rule 15(a)'" and "carries the greatest weight." Id. (citations omitted). Nevertheless, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

## II. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

## DISCUSSION

Plaintiffs' Proposed Second Amended Complaint ("PSAC") deletes nine causes of action and

1  clarifies the roles of the different Defendants as to the remaining six causes of action. Plaintiffs assert
2  the amendment should be granted because it addresses the concerns raised by the Motion to Dismiss
3  and does not result in any prejudice to the Moving Defendants. On the other hand, the Moving
4  Defendants urge the Court to deny the Motion to Amend because it was filed solely in anticipation
5  of the Court's adverse ruling on the pending Motion to Dismiss, and in the alternative because all of
6  the amendments to the remaining six causes of action would be futile. Plaintiffs respond that the
7  timing of their Motion to Amend is based upon their obtainment of more loan documents in response
8  to their Qualified Written Requests ("QWRs"), further forensic auditing of Plaintiffs' loan documents,
9  and the dismissal of similar causes of action in other similar cases. Plaintiffs also argue that their
10 amendments to the remaining six causes of action would not be futile.

11    A.    Dilatory motive

12    Amendment to the pleadings may be denied where it is apparent that there is bad faith or
13 dilatory motive on the part of the movant. See Forman, 371 U.S. at 182. In this case, however, there
14 is no reason to believe the amendment is being sought for a dilatory purpose. Although the amendment
15 might have been motivated by the filing of the Motion to Dismiss, that alone is not sufficient to deny
16 the amendment. Instead, the broad discretion given to the district courts "must be guided by the
17 underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or
18 technicalities." Webb, 655 F.2d at 979 (citing Conley, 355 U.S. at 47-48). Moreover, in the present
19 case, there were other legitimate reasons–such as obtaining additional information on the subject loans
20 through the use of the QWRs and the forensic loan auditing–that gave rise to the Motion to Amend.
21 Accordingly, after careful consideration, the Court finds no bad faith or dilatory motive. See Rusyniak
22 v. Gensini, 629 F. Supp. 2d 203, 216 (N.D. N.Y. 2009) (finding that although the motion to amend
23 was filed after the defendants filed a motion to dismiss, there was no bad faith or dilatory motive
24 where the motion to amend was made shortly after the plaintiffs received certain disclosures).

25    B.    Futility of amendment

26    The Moving Defendants next argue that all of Plaintiffs' amendments are futile. A proposed
27 amendment is futile if it "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P.
28 12(b)(6)." Rusyniak, 629 F. Supp. 2d at 217; accord Ricciuti v. N.Y.C. Transit Authority, 941 F.2d

1   119, 123 (2d Cir. 1991) ("The adequacy of the proposed amended complaint, however, is to be judged
2   by the same standards as those governing the adequacy of a filed pleading."). Accordingly, the Court
3   must determine whether each of PSAC's proposed six causes of action alleges sufficient facts to state
4   a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 570.

                   *i.*      *Intentional misrepresentation (against Greenlight and GMAC)*

6   In their first cause of action, Plaintiffs seek to recover for intentional misrepresentation.
7   According to Plaintiffs, even though they provided their correct income tax returns to Defendants,
8   Defendants ignored said documents and listed a higher income for Plaintiffs. As a result, Plaintiffs
9   were provided with a loan for which they were not qualified and one they could not afford. Plaintiffs
10  allege they were not aware of any of this and detrimentally relied on the misrepresentations by
11  Defendants in signing the promissory notes. Plaintiffs also allege they were not provided with some
12  required disclosures under the Truth in Lending Act ("TILA"), such as the Notice of the Right to
13  Cancel or a Spanish translation of the loan application.

14  The Moving Defendants argue this cause of action should be dismissed as time-barred.
15  Pursuant to Section 338(d) of the California Code of Civil Procedure, an action for relief on the
16  ground of fraud or mistake must be commenced within three years. In the present case, because the
17  loan transaction took place on February 28, 2006, but the complaint was not filed until August 5,
18  2009, Defendants allege the running of the statute of limitations is clear on the face of the complaint.
19  Plaintiffs argue their action is not barred because they are entitled to the delayed "discovery rule."

20  "A plaintiff must bring a claim within the limitations period after accrual of the cause of
21  action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005) (citing Cal. Civ. Proc. Code
22  § 312 and Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999)). "Generally speaking, a cause of action
23  accrues at 'the time when the cause of action is complete with all of its elements.' An important
24  exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of
25  action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (internal
26  citations omitted). The discovery rule "may be expressed by the Legislature or implied by the courts."
27  Norgart, 21 Cal. 4th at 397 (citation omitted). In the present case, Section 338(d) expressly provides
28  that a cause of action for relief on the ground of fraud "is not deemed to have accrued until the

1  discovery, by the aggrieved party, of the facts constituting the fraud." CAL. CIV. PROC. CODE § 338(d).

2  "In order to rely on the discovery rule for delayed accrual of a cause of action, 'a plaintiff
3  whose complaint shows on its face that his claim would be barred without the benefit of the discovery
4  rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability
5  to have made earlier discovery despite reasonable diligence.'" Fox, 35 Cal. 4th at 808 (citation
6  omitted). "In assessing the sufficiency of the allegations of delayed discovery, the court places the
7  burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" Id.
8  (citation omitted). Thus, "[i]n order to adequately allege facts supporting a theory of delayed
9  discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the
10 injury, he or she could not have reasonably discovered facts supporting the cause of action within the
11 applicable statute of limitations period." Id. at 809.

12 In the present case, Plaintiffs have not carried their burden of showing that the "discovery rule"
13 applies to their first cause of action for intentional misrepresentation. Plaintiffs argue in a conclusory
14 fashion that due to the complicated nature of the residential mortgage loan transactions and the
15 hundreds of pages of documents and figures, they "had no reason to suspect such fraud had occurred
16 until discovery of the fraud within this past year." (Pl. Reply to Def. Opp. to Pl. Motion to Amend,
17 at 8.) According to Plaintiffs, they had "no reason to suspect any fraudulent behavior in the loan
18 transaction until the rate adjusted to the point where they could no longer afford to make payments
19 on the loan." (Id. at 8-9.) However, such conclusory allegations cannot satisfy the first requirement
20 of pleading specific facts that show "'the time and manner of discovery.'" See Fox, 35 Cal. 4th at 808.
21 "'The purpose of this requirement is to afford the court a means of determining whether or not the
22 discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs *actually*
23 *learned something* they did not know before.'" E-Fab, Inc. v. Accountants, Inc. Servs., 153 Cal. App.
24 4th 1308, 1324 (2007) (emphasis added). In the present case, Plaintiffs have supplied only vague
25 allegations of when and how they discovered the alleged misconduct.

26 Moreover, even assuming Plaintiffs have met their burden with respect to the first requirement,
27 they have not demonstrated "'the inability to have made earlier discovery despite reasonable
28 diligence.'" Fox, 35 Cal. 4th at 808. Under the discovery rule, "plaintiffs are charged with presumptive

knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." Id. at 807-08 (citation and internal quotation marks omitted). In the present case, Plaintiffs had all of the information they needed to discover and bring an action regarding the alleged wrongs when the loan transaction closed, and they have not alleged that they were prevented in any way from doing so–i.e, nothing prevented Plaintiffs from comparing their loan documents and disclosures with the statutory requirements or with what they were allegedly promised. See Kelley v. Countrywide Home Loans, No. CV F 09-1148 , 2009 WL 3489422, at **5-6 (E.D. Cal. Oct. 26, 2009) (refusing to apply the "discovery rule" where plaintiff was in possession of all relevant information when his loan was consummated); Hutson v. Am. Home Mortgage Servicing, Inc., No. C 09-1951 PJH, 2009 WL 3353312, at *13 (N.D. Cal. Oct. 16, 2009) (same); Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1132 (N.D. Cal. 2009) (same).

Accordingly, because Plaintiffs failed to demonstrate that the "discovery rule" applies to their case, the first proposed cause of action for intentional misrepresentation appears to be time-barred on the face of the complaint. Thus, as currently written, this proposed cause of action does not allege sufficient facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 570.

### ii. *Quiet title (against Greenlight, Countrywide, Ditech, GMAC, and Recontrust)*

Plaintiffs' second proposed cause of action alleges Defendants claim an interest adverse to Plaintiffs' interest in the subject property, in the form of the deeds of trust. According to Plaintiffs, the deeds of trust are invalid and void because: (1) Plaintiffs are entitled to offsets against the promissory notes that secure the deeds of trust, and these offsets are greater in amount than the sum that would otherwise be due, (2) Plaintiffs are entitled to rescission on the basis of fraud; or (3) the promissory notes have been paid-off by a third party and can no longer serve as the basis of a debt obligation underlying the deeds of trust. The Moving Defendants argue Plaintiffs cannot quiet title without first discharging their debt.

The purpose of a quiet title action is "'to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.'" Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970) (quoting

Peterson v. Gibbs, 147 Cal. 1, 5 (1905)). Quite title claims are governed by Section 761.020 of the California Code of Civil Procedure, which provides that a complaint to quiet title "shall be verified," and requires it to include all of the following:

> (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession.
>
> (c) The adverse claims to the title of the plaintiff against which a determination is sought.
>
> (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.
>
> (e) A prayer for the determination of the title of the plaintiff against the adverse claims.

CAL. CIV. PROC. CODE § 761.020.

However, even if the above requirements are met, California courts have pronounced that a mortgagor cannot "quiet title without discharging his debt. The cloud upon his title persist until the debt is paid." See Aguilar v. Bocci, 39 Cal. App. 3d 475, 477 (1974) (citing Burns v. Hiatt, 149 Cal. 617, 620 (1906)); accord Mix v. Sodd, 126 Cal. App. 3d 386, 390 (1981) (noting that a mortgagor in possession may not maintain an action to quiet title without paying the debt, even if the debt is otherwise unenforceable). In the present case, Plaintiffs have failed to tender or allege an ability to tender. Plaintiffs' arguments that they should not be required to tender because they need an accounting are unavailing. As discussed below, Plaintiffs' proposed claim for accounting also fails. Accordingly, because Plaintiffs cannot quiet title without discharging their debts, their proposed second cause of action, as currently written, fails to allege sufficient facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 570.

    *iii. Accounting & violations of RESPA (against Countrywide and Ditech)*

Plaintiffs' proposed third cause of action alleges that Defendants Countrywide and Ditech violated the Real Estate Settlement Procedures Act ("RESPA") by failing to fully respond to Plaintiffs' QWRs, which were allegedly sent on or about January 26, 2009. Plaintiffs also allege that

1 an accounting is necessary to determine if monies are owed to Plaintiffs by way of an off-set.

2 RESPA sets forth the procedures that a loan servicer must follow and certain actions that it must take upon receiving a QWR from a borrower. See 12 U.S.C. § 2605(e). Specifically, a "written response acknowledging receipt" of the request must be sent within 20 days, and an appropriate action with respect to the inquiry must be taken within 60 days, after the receipt of the request. See id. § 2605(e)(1)(A), (e)(2). The statute defines a "qualified written request" as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Id. § 2605(e)(1)(B). "Servicer" is defined in the statute as, "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." Id. § 2605(i)(2). "Servicing" is further defined as, "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Id. § 2605(i)(3).

In this case, because Plaintiffs failed to provide copies of the letters allegedly sent to Ditech, the Court cannot determine at this time whether those letters qualified as QWRs. Notably, Plaintiffs include only a generalized and boilerplate summary of what the letters allegedly demanded.[2] Moreover, apart from conclusory allegations, Plaintiffs also failed to specify whether Defendants ever responded to their QWRs, whether those responses were late, or which specific RESPA requirements

---

[2] According to the PSAC, the QWRs "sought information on whether or not the loan was in lawful compliance with all federal and state laws regarding disclosure, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiffs, all debits and credits to the Plaintiffs' accounts, documentation of all mortgage assignments, accounting of all attorney fees, costs and foreclosure fees, and all late charges assessed to the balance of the loan, an accounting of all monies applied to suspended or forbearance accounts, an accounting of all impounds including taxes and insurance and the fees, charges and commissions paid to all servicers of the account." (PSAC ¶ 32.)

were violated. Accordingly, Plaintiffs fail to state a cause of action for a RESPA violation. See <u>Delino v. Platinum Cmty Bank</u>, 628 F. Supp. 2d 1226, 1231-32 (S.D. Cal. 2009).

Plaintiffs also fail to state a cause of action for accounting. To be entitled to an accounting, a plaintiff must demonstrate at least one of the following: a breach of fiduciary duty, fraud, or that the accounts are complicated and there is a dispute as to whether the money is owed. <u>See, e.g.</u>, <u>Union Bank v. Super. Ct.</u>, 31 Cal. App. 4th 573, 593-94 (1995) (citing cases). In this case, Plaintiffs attempt to base their accounting action on the complicated nature of the accounts themselves. However, "[n]o California decision holds that the existence of a complicated accounting relationship between parties by itself permits the maintenance of a lawsuit between them when no money is owed or property must be returned." <u>Id.</u> at 594. In the present case, while Plaintiffs allegedly owe Defendants a certain amount in arrears on the underlying mortgages, Defendants are not in default and Plaintiffs fail to adequately allege that any funds are owed *to them*. Accordingly, Plaintiffs fail to state a cause of action for accounting. See <u>Rodriguez v. Litton Loan Serv. LP</u>, No. 2:09-cv-00029-MCE-DAD, 2009 WL 1326339, at *3 (E.D. Cal. 2009); <u>Union Bank</u>, 31 Cal. App. 4th at 594 (citing cases).

For the foregoing reasons, as currently written, Plaintiffs' third proposed cause of action fails to state a claim upon which relief can be granted. See <u>Twombly</u>, 550 U.S. at 570.

*iv.     Violations of TILA (against Countrywide and Ditech)*

Plaintiffs' fourth proposed cause of action alleges that Defendants violated TILA and Regulation Z by failing to make certain required disclosures. However, Plaintiffs' TILA claims appear to be barred on the face of the complaint. As Moving Defendants point out, claims for damages under TILA must be commenced within one year following the date of the alleged violation. <u>See</u> 15 U.S.C. § 1640(e); <u>see also</u> <u>Lynch v. RKS Mortgage Inc.</u>, 588 F. Supp. 2d 1254, 1259 (E.D. Cal. 2008). The date of violation refers to the date of the consummation of the transaction, unless the doctrine of equitable tolling applies. <u>King v. State of Cal.</u>, 784 F.2d 910, 915 (9th Cir. 1986). The statute of limitations on a TILA claim for rescission, on the other hand, may be extended to three years where

the lender fails to provide the borrower with certain "material disclosures."[3] See 15 U.S.C. § 1635(f); 12 C.F.R. §§ 226.15(a)(3), 226.23(a)(3).

In the present case, because the loan transaction took place on February 28, 2006, but the complaint was not filed until August 5, 2009, the running of both statutes of limitations appears to be clear on the face of the complaint. Moreover, just like with the first proposed cause of action, Plaintiffs have not carried their burden of showing that equitable tolling applies in this context. As previously noted, Plaintiffs had all of the information they needed to discover and bring an action regarding the alleged wrongs when the loan transaction closed, and they have not alleged that they were prevented in any way from doing so. See Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (concluding that plaintiff was not entitled to tolling where "nothing prevented [her] from comparing the loan contract, [defendant's] initial disclosures, and TILA's statutory and regulatory requirements" (citing King, 784 F.2d at 915)). Accordingly, because Plaintiffs' TILA cause of action, as currently written, appears to be time-barred on the face of the complaint, it fails to allege sufficient facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 570..

> *v.   Violation of Cal. Business & Professional Code Section 17200 (against Greenlight and GMAC)*

Plaintiffs' fifth proposed cause of action alleges that Defendants engaged in unlawful, unfair, and fraudulent business practices as alleged elsewhere in the PSAC in violation of Section 17200 of the Business & Professions Code. Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163 (1999). As one court has explained:

> An act is "unlawful" under section 17200 if it violates an underlying state or federal

---

[3] The term "material disclosures" means "the information that must be provided to satisfy the requirements in § 226.6 with regard to the method of determining the finance charge and the balance upon which a finance charge will be imposed, the annual percentage rate, the amount or method of determining the amount of any membership or participation fee that may be imposed as part of the plan, and the payment information described in § 226.5b(d)(5)(i) and (ii) that is required under § 226.6(e)(2)." 12 C.F.R. § 226.15(a)(3) n.36.

> statute or common law. . . . An act is "unfair" if the act "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." . . . A practice is "fraudulent" if members of the public are likely to be deceived. . . . .

Fortaleza v. PNC Fin. Serv. Group, Inc., 642 F. Supp. 2d 1012, 1019 (N.D. Cal. 2009) (internal citations omitted). Moreover, "[b]y proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." Cel-Tech, 20 Cal. 4th at 180.

Plaintiffs' PSAC once again fails to plead sufficient facts to apprise Defendants of the claims against them. A plaintiff alleging unfair business practices under Section 17200 "must state with reasonable particularity the facts supporting the statutory elements of the violation." Fortaleza, 642 F. Supp. 2d at 1019 (internal quotation marks and citation omitted); see also Khoury v. Maly's of Cal., 14 Cal. App. 4th 612, 619 (1993) (citations omitted). In the present case, Plaintiffs' fifth proposed cause of action merely states that Defendants violated Section 17200 by reason of their "fraudulent, deceptive, unfair and other wrongful conduct" as alleged elsewhere in the PSAC. (PSAC ¶ 48.) This is insufficient to provide Defendants with notice of the claims against them. See Fortaleza, 642 F. Supp. 2d at 1020 (dismissing a Section 17200 claim where the plaintiff failed to allege "with 'reasonable particularity' the facts surrounding any purportedly fraudulent statements made by defendants-i.e., the who, what, where, and when of such statements"). Moreover, to the extent Plaintiffs argue that Defendants violated Section 17200 "by consummating an unlawful, unfair and fraudulent business practice, designed to place Plaintiffs into an unsuitable mortgage product thereby risking their equity in the Property and causing financial distress," (see PSAC ¶ 48), such conclusory allegations are insufficient to survive a motion to dismiss. See, e.g., Zlotnik v. U.S. Bancorp, No. C 09-3855 PJH, 2009 WL 5178030, at **4-5 (N.D. Cal. Dec. 22, 2009) (dismissing a similarly phrased claim); Fimbres v. Chapel Mortg. Corp., No. 09-CV-0886-IEG (POR), 2009 WL 4163332, at **13-14 (S.D. Cal. Nov. 20, 2009) (same). Accordingly, as currently written, Plaintiffs' cause of action for violation Section 17200 fails to allege sufficient facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 570.

> *vi.     Violation of Cal. Civil Code Section 1632 (against Greenlight and GMAC)*

Plaintiffs' sixth proposed cause of action alleges that Defendants engage in trade or business

as described in Section 1632 of the California Civil Code and that they negotiate contracts primarily in Spanish, either orally or in writing, and therefore are required to translate said contracts into Spanish. Plaintiffs allege that although their primary language is Spanish, during the course of their loan negotiation with Defendants no pertinent documents were provided in Spanish.

Section 1632 provides that any person who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, "shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement." CAL. CIV. CODE § 1632(b). Section 1632 applies to any "loan or extension of credit for use primarily for personal, family or household purposes," such as the loan in this case, only to the extent that it was negotiated by a real estate broker. See Ortiz v. Accredited Home Lenders, Inc., 639 F. Supp. 2d 1159, 1166-67 (S.D. Cal. 2009); see also CAL. CIV. CODE § 1632(b)(4). In other words, for Greenlight or GMAC to be liable under Section 1632, Plaintiffs must allege that they either acted as real estate brokers or had a principal-agent relationship with the brokers who negotiated their loans. See Ortiz, 639 F. Supp. 2d at 1167. In the present case, the sixth proposed cause of action fails because Plaintiffs never allege that these Defendants acted in either capacity described above. Accordingly, as currently written, this proposed cause of action does not allege sufficient facts to state a claim for relief that is plausible on its face.[4] See Twombly, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, while the Court finds no dilatory motive or bad faith, as well as no prejudice to the Moving Defendants in allowing Plaintiffs to file a second amended complaint, the Court concludes that all six of the proposed causes of action as currently written fail to allege sufficient facts to state claims for relief that are plausible on their face. See Twombly, 550 U.S. at 570. However, because it might be possible for Plaintiffs to allege a viable cause of action with respect to some of the above causes of action, the Court **GRANTS IN PART** Plaintiffs' motion for leave to file

---

[4] The Court also notes that Plaintiffs' claim may be time barred by the applicable one-year statute of limitations and that Plaintiffs have not alleged that they can tender sufficient funds to effectuate a rescission of the loans, as required by Section 1632(k). See Castaneda v. Saxon Mortg. Serv., Inc., — F. Supp. 2d —, 2009 WL 4640673, at *7 (E.D. Cal. 2009); Delino, 628 F. Supp. 2d at 1234; see also CAL. CIV. CODE §§ 1632(k), 1691(b); CAL. CIV. PROC. CODE § 340(a).

an amended complaint and **ORDERS** Plaintiffs to file their second amended complaint **within 20 days** of the filing of this Order. The amended complaint should only make the revisions to the six causes of action discussed in Plaintiffs' Motion for Leave to File a Second Amended Complaint, should be a complete document without reference to any prior pleading, and should not add any new causes of action. Finally, the Court **DENIES AS MOOT** the Motion to Dismiss.

**IT IS SO ORDERED.**

DATED: April 19, 2010

*(signature)*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**