# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR ESPINOZA and MARIBEL GUARDADO,<br><br>             Plaintiffs,<br><br>    vs.<br><br>RECONTRUST COMPANY, N.A.; COUNTRYWIDE HOME LOANS INC., a California Corporation; DITECH HOME FINANCING; GREENLIGHT FINANCIAL SERVICES, a California Corporation; GMAC MORTGAGE, LLC, a California Limited Liability Company; and DOES 1-20,<br><br>             Defendants. | CASE NO. 09-CV-1687 - IEG (RBB)<br><br>ORDER GRANTING MOTION TO DISMISS [Doc. No. 33] |

Currently before the Court is Defendants Ditech Home Financing ("Ditech") and GMAC Mortgage, LLC's ("GMAC") Motion to Dismiss Second Amended Complaint. [Doc. No. 29]. Plaintiffs filed an opposition and Defendants replied. Having considered the partes' arguments, and for the reasons set forth below, the Court **GRANTS** the motion to dismiss.

## BACKGROUND

Plaintiffs Oscar Espinoza and Maribel Guardado are owners of certain real property commonly known as 1427 RIVERVIEW AVE., EL CENTRO, CA 92243 ("Property"). On or around February 28, 2006, Plaintiffs purchased the Property with the financing obtained from Defendants. Plaintiffs borrowed $318,200 for the first mortgage and $79,500 for the concurrent second mortgage from

Defendant Greenlight Financial Services ("Greenlight").[1] (Def. RJN, Exs. 1, 2.) Plaintiffs allege Defendant Countrywide Home Loans ("Countrywide") is the current servicer of the first loan and Defendant Ditech is the current servicer of the second loan. (SAC ¶ 8.)

Plaintiffs subsequently had difficulties making payments on the mortgages, and on July 24, 2009, received a Notice of Trustee's Sale from Defendant Recontrust Company, setting a trustee's sale of the Property for August 14, 2009. On August 5, 2009, Plaintiffs commenced the present action, alleging eighteen causes of action against Defendants. [Doc. No. 1]. Defendants Ditech and GMAC (together, "Moving Defendants") then filed a motion to dismiss pursuant to Rule 12(b)(6). [Doc. No. 5]. However, before the Court could rule on the motion, Plaintiffs filed their First Amended Complaint ("FAC"), alleging fifteen causes of action. [Doc. No. 9]. In light of the FAC, the Court denied as moot the Motion to Dismiss. [Doc. No. 11]. Moving Defendants immediately filed another motion to dismiss, and Plaintiffs filed a motion for leave to file a Second Amended Complaint ("SAC"). [Doc. Nos. 12, 18]. On April 19, 2010, the Court denied as moot the motion to dismiss and granted in part the motion for leave to file SAC. [Doc. No. 27].

Plaintiffs filed their SAC on May 7, 2010, alleging six causes of action: (1) intentional misrepresentation; (2) fraudulent concealment; (3) accounting and violation of Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) and 24 C.F.R. § 3500; (4) quiet title; (5) violation of the Trust in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; and (6) violation of RESPA, 12 U.S.C. § 2607. [Doc. No. 28]. The present motion to dismiss followed.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780,

---

[1] Such back-to-back loans are commonly referred to as "piggyback" loans because the second loan is typically taken out either to cover the value of the home in excess of the first loan, and/or to cover the down payment requirement of the first loan. See, e.g., In re Ambac Fin. Group, Inc. Sec. Litig., — F. Supp. 2d —, 2010 WL 727227, at *5 & n.11 (S.D. N.Y. 2010); In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1150 (C.D. Cal. 2008).

1  783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting
2  all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.
3  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).
4       Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal,
5  --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff]
6  can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State
7  Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded
8  factual allegations, a court should assume their veracity and then determine whether they plausibly
9  give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

10 **DISCUSSION**

11 **I.  Judicial notice**

12      Moving Defendants ask the Court to take judicial notice of the following documents pursuant
13  to the Federal Rule of Evidence 201: (1) the First Deed of Trust, executed on February 24, 2006, and
14  recorded on February 28, 2006; (2) the Second Deed of Trust, executed on February 24, 2006, and
15  recorded on February 28, 2006; (3) this Court's April 19, 2010 Order Granting in Part Motion for
16  Leave to File Second Amended Complaint and Denying as Moot Motion to Dismiss; and (4) the Grant
17  Deed, executed on November 30, 2005, and recorded on February 26, 2006. (See Def. RJN, Exs. 1,
18  2, 3, 4.) The Court will take judicial notice of Exhibits 1, 2, and 4 because those exhibits are matters
19  of public record whose accuracy cannot reasonably be questioned. See FED. R. EVID. 201(a); Lee v.
20  City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). On the other hand, the Court declines to
21  take judicial notice of the Court's order (Exhibit 3) as it is unnecessary to do so.

22 **II.  Defendant GMAC**

23      In the SAC, Plaintiffs allege Defendant GMAC was the original lender of the second loan. (See
24  SAC ¶ 7.) However, in their opposition to the present motion to dismiss, Plaintiffs finally admit that
25  "Defendant GMAC was not the lender on the second mortgage and was mistakenly identified as such
26  by the financial audit." (Pl. Opp., at 2.) In their opposition, Plaintiffs also indicate they will be filing
27  a Rule 41(a) motion to dismiss Defendant GMAC from the current action. However, to date, no such
28  motion has been filed. Accordingly, the Court **GRANTS** the motion to dismiss **WITH PREJUDICE**

as it relates to Defendant GMAC and **DISMISSES** Defendant GMAC from this action.

### III.    Defendant Ditech

The SAC by itself alleges only one cause of action against Defendant Ditech–the fourth cause of action for quiet title. (SAC ¶¶ 57-62.) In their opposition to the motion to dismiss, Plaintiffs also allege that the third cause of action for accounting and violation of RESPA was meant to be alleged against Ditech, seeing as Ditech is the named defendant throughout the entire body of the third claim and the fact that the qualified written request ("QWR") (attached as Exhibit B to the SAC) is addressed to Ditech as the servicer of the second loan. (See Pl. Opp., at 4.)

A.    RESPA and accounting

Plaintiffs' third cause of action alleges Defendants Countrywide Home Loans, Inc. ("Countrywide") and Ditech violated RESPA when they failed to fully provide information in response to Plaintiffs' QWRs that were sent on January 22, 2009. (See SAC, Exs. A, B.) The third cause of action also alleges an accounting is necessary to determine if monies are owed to Plaintiffs by way of set-off or otherwise. Finally, Plaintiffs allege Countrywide and Ditech engage in a pattern and practice of not responding to borrower inquiries "especially as they relate to the identity of the note holders." (SAC ¶ 56.) Moving Defendants argue Plaintiffs are not entitled to accounting because it is not an independent cause of action, but instead a form of equitable relief. Moreover, according to Moving Defendants, there can be no accounting in the absence of a fiduciary relationship between the parties or some fraud. Finally, Defendants argue the RESPA claim fails because Plaintiffs' letters did not qualify as proper QWRs, Plaintiffs have failed to show whether Moving Defendants did not adequately respond, and Plaintiffs have not shown how they were damaged.

*i.    RESPA claim*

RESPA sets forth the procedures that a loan servicer must follow and certain actions that it must take upon receiving a QWR from a borrower. 12 U.S.C. § 2605(e). Specifically, a "written response acknowledging receipt" of the request must be sent within 20 days, and an appropriate action with respect to the inquiry must be taken within 60 days, after the receipt of the request. Id. § 2605(e)(1)(A), (e)(2). In this case, Plaintiffs argue Defendants failed to fully comply with RESPA when responding to their QWRs sent on January 22, 2009.

As an initial matter, the Court finds that the requests sent by Plaintiffs to Defendants Countrywide and Ditech qualify as QWRs under RESPA. To constitute a QWR, the request must be in a form of "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). In this case, Plaintiffs' requests qualify as QWRs because they were made as part of a "written correspondence" that included "the name and account of the borrower[s]," stated the reasons why Plaintiffs believed "the account [was] in error," and also provided "sufficient detail to the servicer regarding other information sought" by Plaintiffs.[2] See id.; see also Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156, 1162 (M.D. Ala. 1999). These requests also related to the "servicing" of their loan, in that they asked Defendants to provide, among other things, certain information relating to the payments received, breakdown of those payments, and the interest rates charged. See 12 U.S.C. § 2605(e)(1)(A), (i)(3).

Similarly, taking Plaintiffs' allegations as true, Defendants failed to fully comply with RESPA. Plaintiffs' SAC alleges Defendants failed to provide, among other things, information regarding "the identity of all holders of the note secured by the deed of trust," "the calculation of the principal and interest," "documentation of all assignments, transfers or sale of the note," "copies of all checks or

---

[2] In summary, Plaintiffs' requests "sought information on whether or not the loan was in lawful compliance with all federal and state laws regarding disclosure, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiffs, all debits and credits to the Plaintiffs' accounts, documentation of all mortgage assignments, accounting of all attorney fees, costs and foreclosure fees, and all late charges assessed to the balance of the loan, an accounting of all monies applied to suspended or forbearance accounts, an accounting of all impounds including taxes and insurance and the fees, charges and commissions paid to all servicers of the account." (SAC ¶ 53; see also id., Exs. A, B.) While not all of this information could properly be sought through a QWR, see, e.g., Consumer Solutions REO, Inc. v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009), the letters do provide Defendants with "sufficient detail" regarding information that *can* properly be sought–such as information relating to the payments received, breakdown of those payments, and the interest rates charged. See 12 U.S.C. § 2605(e)(1)(A), (i)(3).

1  other evidence of payments made by the Plaintiffs," and "all debits and credits to the Plaintiffs'
2  accounts." (SAC ¶ 54.) Contrary to Defendants' arguments, these allegations are sufficient "to raise
3  the right to relief above the speculative level." See Twombly, 550 U.S. at 555.

4      Plaintiffs, however, have failed to adequately allege that they were damaged by Defendants'
5  failure to comply with RESPA. Section 2605(f)(1) provides that "[w]hoever fails to comply with any
6  provision of this section shall be liable to the borrower for each such failure in the following amounts:
7  . . . (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages,
8  as the court may allow, in the case of a pattern or practice of noncompliance with the requirements
9  of this section, in an amount not to exceed $1,000." "Although this section does not explicitly set this
10 out as a pleading standard, a number of courts have read the statute as requiring a showing of
11 pecuniary damages in order to state a claim." Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089,
12 1097 (N.D. Cal. 2009); accord Hutchinson v. Del. Sav, Bank FSB, 410 F. Supp. 2d 374, 383 (D. N.J.
13 2006) ("However, alleging a breach of RESPA duties alone does not state a claim under RESPA.
14 Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.").

15     Courts have interpreted the requirement to plead pecuniary loss liberally, see Yulaeva v.
16 Greenpoint Mortg. Funding, Inc., No. CIV. S-09-1504 LKK/KJM, 2009 WL 2880393, at *15 (E.D.
17 Cal. Sept. 3, 2009), and have held such claims as emotional distress, time spent away from
18 employment, and even negative credit ratings to be recoverable as "actual damages" under §
19 2605(f)(1)(A). See, e.g., Anderson v. Barclays Capital Real Estate, Inc., No. 3:09CV2335, 2010 WL
20 2541807, at *6 (N.D. Ohio June 18, 2010); Arellana v. Am. Home Mortg. Serv., Inc., No. C 09-05103
21 JSW, 2010 WL 2300986, at *2 (N.D. Cal. June 4, 2010) (listing cases); Allen, 660 F. Supp. 2d at
22 1097. In this case, however, Plaintiffs provide only conclusory allegations as to how they were
23 damaged.[3] Such conclusory allegations are insufficient to allege that Plaintiffs suffered "actual
24 damages" as a result of Defendants' failure to comply.

25     Similarly, Plaintiffs' conclusory allegations are insufficient to allege Defendants engaged in
26 "a pattern or practice of noncompliance" with the RESPA requirements, such as would entitle
27
28     [3] Specifically, in this regard, Plaintiffs merely allege that: "[a]s a result of the failure to respond fully to the QWR Plaintiffs are entitled to actual damages in an amount to be proved." (SAC ¶ 56.)

Plaintiffs to recover "additional damages, as the court may allow." See 12 U.S.C. § 2605(f)(1)(B). A failure to respond to two requests does not state "a pattern or practice of noncompliance." See, e.g., McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009). Likewise, Plaintiffs' allegations that "this pattern has been established by the numerous cases Plaintiff's counsel has filed on behalf of other clients against Defendants as a mortgage loan servicer," (SAC ¶ 56), are not sufficient "to raise the right to relief above the speculative level." See Twombly, 550 U.S. at 555.

Accordingly, because Plaintiffs have failed to allege sufficient facts to state a claim for relief under RESPA, the Court **GRANTS** the motion to dismiss in this regard. However, because Plaintiffs can likely amend their complaint to adequately allege damages suffered as a result of Defendants' RESPA violation, the RESPA claim is **DISMISSED WITH LEAVE TO AMEND**.

    *ii.* *Accounting*

Plaintiffs have also failed to state a valid claim for accounting. As the Court previously noted, to be entitled to an accounting, a plaintiff must demonstrate at least one of the following: a breach of fiduciary duty, fraud, or that the accounts are complicated and there is a dispute as to whether the money is owed. See Union Bank v. Super. Ct., 31 Cal. App. 4th 573, 593-94 (1995) (citing cases). Because none of these are applicable in this case, Plaintiffs cannot state a valid claim.

Moreover, an accounting is not an independent cause of action, but instead a form of equitable relief. Batt v. City & County of S.F., 155 Cal. App. 4th 65, 82 (2007). Accordingly, the Court **GRANTS** the motion to dismiss and **DISMISSES WITH PREJUDICE** the third *cause of action* for accounting. Plaintiffs' request for an accounting as a *remedy*, however, remains viable–provided Plaintiffs are successful on the merits of one of their other causes of action, such as RESPA.

  B. Quiet title

Plaintiffs' fourth cause of action alleges Defendants claim an interest adverse to Plaintiffs' interest in the Property, in the form of a deed of trust. (SAC ¶ 59.) According to Plaintiffs, the First Deed of Trust is invalid and void because Plaintiffs have already rescinded the loan. (SAC ¶ 60.) Plaintiffs also allege the First Deed of Trust is invalid and void because Plaintiffs are entitled to offsets against the promissory note that secures the deed of trust, and these offsets are greater in amount than the sum that would otherwise be due. (SAC ¶ 61.) Moving Defendants argue Plaintiffs cannot state

a claim for quiet title because: (1) it is time-barred; (2) the statutory pleading requirements have not been met; (3) Plaintiffs have failed to adequately allege an ability to tender; and (4) there is no basis to quiet title in Plaintiffs' name. (Def. Motion, at 15-17.)

### i.    *Statute of limitations*

Plaintiffs' quiet title claim is not time-barred. Normally, the theory of relief underlying an action for quiet title determines which statute of limitations applies. See Muktarian v. Barmby, 63 Cal. 2d 558, 659 (1965); Leeper v. Beltrami, 53 Cal. 2d 195, 207 (1959). In case of fraud or mistake, the statute of limitations is three years. CAL. CIV. PROC. CODE § 338(d); Muktarian, 63 Cal. 2d at 560. However, "no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property." Muktarian, 63 Cal. 2d at 560 (citations omitted). Accordingly, because Plaintiffs are still in possession of the Property, their quiet title claim is not time-barred.

### ii.   *Ability to tender*

California courts have pronounced that in order to maintain a cause of action to quiet title, the mortgagor must allege tender or ability to tender the amounts admittedly borrowed. See Aguilar v. Bocci, 39 Cal. App. 3d 475, 477 (1974) (noting that a mortgagor cannot "quiet title without discharging his debt. The cloud upon his title persist until the debt is paid." (citing Burns v. Hiatt, 149 Cal. 617, 620 (1906)); Mix v. Sodd, 126 Cal. App. 3d 386, 390 (1981) (noting that a mortgagor in possession may not maintain an action to quiet title without paying the debt, even if the debt is otherwise unenforceable). In this case, Plaintiffs have indicated that they "are willing and able and hereby offers [sic] to tender any and all amounts due to any of said Defendants, upon condition that said Defendants do likewise, as said amounts are determined in a judgment by this court." (SAC ¶ 60.) The Court finds this allegation to be sufficient at this stage of the proceedings. See Ramanujam v. Reunion Mortg., Inc., No. 5:09-cv-03030-JF, 2010 WL 668036, at **4-5 (N.D. Cal. Feb. 19, 2010) (finding sufficient plaintiff's allegation that he "'is ready, willing and able to tender back to defendants whatever amount due them under the Truth in Lending Act, once such amount is determined. Presently, that amount is not known.'"). Accordingly, the Court declines to require Plaintiffs to make an actual tender at this time.

///

### *iii.  Statutory pleading requirements*

Turning to the merits of the quiet title claim, Plaintiffs have failed to comply with the applicable statutory pleading requirements. The purpose of a quiet title action is "'to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.'" Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970) (quoting Peterson v. Gibbs, 147 Cal. 1, 5 (1905)). Quiet title claims are governed by Section 761.020 of the California Code of Civil Procedure, which provides that a complaint to quiet title "shall be verified," and requires it to include all of the following:

> (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession.
>
> (c) The adverse claims to the title of the plaintiff against which a determination is sought.
>
> (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.
>
> (e) A prayer for the determination of the title of the plaintiff against the adverse claims.

CAL. CIV. PROC. CODE § 761.020.

In the present case, Plaintiffs' SAC is not "verified." This, by itself, may be sufficient to dismiss this cause of action. See Anaya v. Advisors Lending Group, No. CV F 09-1191 LJO DLB, 2009 WL 2424037, at *7 (E.D. Cal. Aug. 5, 2009). More importantly, however, Plaintiffs have failed to demonstrate or even allege why they are entitled to quiet title with respect to the Second Deed of Trust. Plaintiffs' fourth cause of action alleges only that the *First* Deed of Trust is "invalid and void" because Plaintiffs have already rescinded the loan, (SAC ¶ 60), and that the *First* Deed of Trust is "invalid and void" because Plaintiffs are entitled to offsets against the promissory note that secures the deed of trust, and these offsets are greater in amount than the sum that would otherwise be due, (id. ¶ 61). There are no allegations in the fourth cause of action, or in the rest of the SAC, indicating why Plaintiffs believe the *Second* Deed of Trust is invalid and void. Accordingly, Plaintiffs have failed

1  to demonstrate that they are entitled to quiet the title with respect to the Second Deed of Trust.

2  For the foregoing reasons, because Plaintiffs have failed to allege sufficient facts to state a quiet title claim and in light of their decision not to oppose the motion to dismiss on this ground, the Court **GRANTS** the motion to dismiss in this regard. Moreover, because Plaintiffs already had two opportunities to amend their complaint, and because it is unlikely they can state a viable quiet title claim against Ditech, this cause of action is **DISMISSED WITH PREJUDICE** as to Ditech.

## CONCLUSION

Accordingly, with respect to Defendant GMAC, the Court **GRANTS** the motion to dismiss in its entirety and **DISMISSES WITH PREJUDICE** Defendant GMAC from this action.

As to Defendant Ditech, the Court also **GRANTS** the motion to dismiss. The third cause of action against Ditech is **DISMISSED WITH LEAVE TO AMEND** to the extent it alleges a RESPA violation, and it is **DISMISSED WITH PREJUDICE** to the extent it alleges a *cause of action* for accounting. Plaintiffs' request for an accounting as a *remedy*, however, remains viable–provided Plaintiffs are successful on the merits of one of their other causes of action. Finally, the fourth cause of action for quiet title is **DISMISSED WITH PREJUDICE** as to Ditech.

If Plaintiffs wish to file an amended complaint, they should do so **within 21 days** of the filing of this Order. The amended complaint should only make the revisions to the third and fourth causes of action discussed above, should omit any claims against Defendant GMAC, should be a complete document without reference to any prior pleading, and should not add any new causes of action.

**IT IS SO ORDERED.**

**DATED: July 13, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**