# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR ESPINOZA and MARIBEL GUARDADO,<br><br>                              Plaintiffs,<br><br>    vs.<br><br>RECONTRUST COMPANY, N.A.; COUNTRYWIDE HOME LOANS INC., a California Corporation; DITECH HOME FINANCING; GREENLIGHT FINANCIAL SERVICES, a California Corporation; GMAC MORTGAGE, LLC, a California Limited Liability Company; and DOES 1-20,<br><br>                              Defendants. | CASE NO. 09-CV-1687 - IEG (RBB)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT GREENLIGHT FINANCIAL SERVICES' MOTION TO DISMISS**<br><br>**(2) DISMISSING DEFENDANTS RECONSTRUST, N.A. AND COUNTRYWIDE HOME LOANS**<br><br>[Doc. Nos. 37, 41] |

   Presently before the Court is a motion to dismiss brought by Defendant Greenlight Financial Services. (Doc. No. 37.)  Rather than opposing the motion, and in violation of a Court order, Plaintiffs filed a (third) amended complaint.  (Doc. Nos. 40, 41.)  The Court ordered the amended complaint stricken and, additionally, ordered Plaintiffs to show cause why Defendants Reconstrust, N.A. and Countrywide Home Loans, Inc. should not be dismissed from this action for want of prosecution. (Doc. No. 41.)  The Court held a hearing on September 13, 2010 on Defendant's motion to dismiss and the Court's order to show cause.  For the reasons described herein, the Court **GRANTS** Defendant's motion to dismiss and **DISMISSES WITH PREJUDICE** all claims against Defendant

Greenlight Financial Services. In addition, the Court **DISMISSES WITHOUT PREJUDICE** all claims against Defendants Reconstrust, N.A. for failure to serve and **DISMISSES WITHOUT PREJUDICE** all claims against Countrywide Home Loans, Inc. for want of prosecution.

## BACKGROUND

The following background, unless otherwise specified, is taken from Plaintiffs' Second Amended Complaint ("SAC"). On or about February 28, 2006, Plaintiffs purchased a home in El Centro, California (the "Property"). Plaintiffs financed the Property by borrowing a total $397,700 in the form of two concurrent, "piggybacked" mortgage loans. Plaintiffs borrowed $318,200 for the first mortgage from Defendant Greenlight Financial Services ("Greenlight") and $79,500 for the concurrent second mortgage from former Defendant GMAC Mortgage, LLC ("GMAC").[1] On or about that date, Plaintiffs executed the above-referenced notes for the amounts borrowed, which notes were secured by Deeds of Trust on the Property.[2]

Plaintiffs allege the loan they applied for was marketed as a fixed rate mortgage loan. However, instead of a fixed rate mortgage, the interest rate was only locked in place for the first five years. After the initial period, the monthly mortgage payment would increase dramatically when the interest rate of the loan began to adjust. Furthermore, although Defendant made representations about the affordability of the loan, the actual amount—after the interest rate adjustment—was substantially more than Plaintiffs could afford.

According to Plaintiffs, Greenlight failed to provide initial Truth in Lending ("TILA") statements and other disclosures required by the Real Estate Settlement Procedures Act ("RESPA"). As a consequence, Plaintiffs allege it was impossible for them to determine the actual amount of the loan and payments or determine if any fraud existed in the loan documents.

Plaintiffs allege Defendant knowingly or willfully ignored the reality of Plaintiffs' true income. For example, Defendant did not request a tax transcript, although Plaintiffs had signed a release for

---

[1] In most instances, when Plaintiffs reference Greenlight in the SAC, they also reference GMAC. Because GMAC is no longer a party to this action, and for the purpose of simplicity, the Court will not mention GMAC unless it is pertinent to Plaintiffs' claims against Greenlight.

[2] Defendant Countrywide Home Loans, Inc. (now Bank of America) is the servicing company for the first loan and former Defendant Ditech is the servicing company for the second loan. Defendant Reconstrust, N.A., is the trustee on the Deed of Trust.

one. In the same vein, through its Stated Income loan program, Defendant did not require Plaintiffs to verify their income. Plaintiffs allege the loan program gave Defendant the ability to make up whatever income was needed to qualify Plaintiffs for the loan. Despite Defendant's attempts at willful ignorance, Plaintiffs disclosed their true income during the loan application process. Without Plaintiffs' consent, Defendant either fraudulently inflated the Plaintiffs' income on the loan application in order to qualify the Plaintiffs for the adjustable rate mortgage or failed to perform income analysis at all to determine if the Plaintiffs qualified for or could afford the loans.

Plaintiffs did not have any indication that anything was wrong until the loan rate adjusted to the point that they could no longer afford to make payments.[3] It was then that Plaintiffs obtained a forensic review of their loan documents and discovered violations of federal and state law. Furthermore, Plaintiffs received all loan documents in English although they are Spanish speakers and conducted the loan transaction in Spanish.

Plaintiffs filed their original complaint, which consisted of eighteen causes of action against five Defendants, on August 9, 2009. (Doc. No. 1.) By the time Plaintiffs filed their SAC on May 7, 2010, six causes of action remained. (Doc. No. 28.) On May 21, 2010, two of the Defendants, Ditech Home Financing and GMAC Mortgage, LLC, filed a motion to dismiss Plaintiffs' SAC. (Doc. No. 29.) The Court granted the motion on July 13, 2010 and instructed Plaintiffs that if they wished to file an amended complaint, they must do so within 21 days. (Doc. No. 36.) After 21 days had expired, on August 3, 2010, Defendant Greenlight filed the present motion to dismiss. (Doc. No. 37.) Rather than opposing the motion, and in violation of the Court's July 13, 2010 order, Plaintiffs filed a third amended complaint on September 2, 2010. (Doc. No. 40.) The Court ordered the third amended complaint stricken and, in addition, ordered Plaintiffs to show cause why Defendants Reconstrust, N.A. and Countrywide Home Loans, Inc. ("Countrywide") should not be dismissed from this action for want of prosecution. (Doc. No. 41.) On September 13, 2010, the Court held a hearing on Defendant Greenlight's motion to dismiss and the Court's order to show cause. Plaintiffs' counsel did

---

[3] The Court observes, based on Plaintiffs' allegations, that they apparently defaulted on the loan and filed this lawsuit before any interest rate adjustment took place. The loans were consummated in February 2006 and the lawsuit commenced in August 2009, less than five years later (and thus prior to the scheduled interest rate adjustment).

not appear at the hearing. In a letter dated September 14, 2010, Plaintiffs' counsel informed the Court he had "resigned as a member of the California State Bar." The Court has attached the letter to this order because it is not evident that counsel has notified Plaintiffs of his resignation from the State Bar.

## DISCUSSION

### I. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 LED.2d 868 (2009). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

///
///
///

## II. Analysis

### A. Intentional Misrepresentation and Fraudulent Concealment

In their first and second causes of action against Defendant Greenlight, Plaintiffs seek damages for intentional misrepresentation and fraudulent concealment. They allege Defendant failed to make a variety of disclosures required under federal and state law, and as a result, the loan seemed less expensive than it really was. In its motion to dismiss, Defendant contends Plaintiffs' intentional misrepresentation claim should be dismissed as time barred because Plaintiffs' original complaint was not filed until more than three years after the loan transaction. In any event, Defendant contends that Plaintiffs' allegations regarding both claims lack the specificity required by Federal Rule of Civil Procedure 9(b).[4]

#### 1. Limitation Period for Intentional Misrepresentation

Pursuant to Section 338(d) of the California Code of Civil Procedure, an action for relief on the ground of fraud or mistake must be commenced within three years. "A plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (Cal. 2005) (citing Cal. Civ. Proc. Code § 312 and Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (Cal. 1999)). "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (internal citations omitted). The discovery rule "may be expressed by the Legislature or implied by the courts." Norgart, 21 Cal. 4th at 397 (citation omitted). In the present case, Section 338(d) expressly provides that a cause of action for relief on the ground of fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." Cal. Civ. Proc. Code § 338(d).

"In order to rely on the discovery rule for delayed accrual of a cause of action, 'a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery

---

[4] Defendant also argues that Plaintiffs' fraudulent concealment claim fails because Defendant had no fiduciary relationship with Plaintiff. The Court does not need to address that argument because it concludes Plaintiffs have not stated a fraudulent concealment claim with the particularity required by Fed. R. Civ. P. 9(b).

rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" Fox, 35 Cal. 4th at 808 (citation omitted). "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" Id. (citation omitted). Thus, "[i]n order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." Id. at 809.

In this case, Plaintiffs allege that as soon as they suspected fraud, they submitted their loan documents for forensic review. SAC ¶¶ 23, 74. Prior to such discovery, Plaintiffs were impeded by Defendant's misrepresentations, which concealed the existence of the fraud. SAC ¶¶ 23, 74. In addition, Plaintiffs were impeded from discovering the fraud because they received only English language loan documents although they are Spanish speakers and the loan negotiations were conducted in Spanish. SAC ¶¶ 15, 23, 74. Reading the SAC liberally, the Court concludes that Plaintiffs' intentional misrepresentation claim did not accrue until they discovered the alleged fraud upon forensic audit of their loan documents in early 2009, and therefore the claim is not barred by the statute of limitations.

### 2. Specificity Requirements of Fed. R. Civ. P. 9(b)

Intentional misrepresentation and fraudulent concealment claims must be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). In the Ninth Circuit, this rule has been interpreted as requiring the plaintiff to allege "the who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Bly-Magee, 236 F.3d 1014, 1019 (9th Cir. 2001)). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106 (quoting Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)). Specifically, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were

1 fraudulent, state when and where the statements were made, and identify those responsible for the
2 statements." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).
3 Plaintiffs must "differentiate their allegations when suing more than one defendant . . . and inform
4 each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz
5 v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

6 In this case, Plaintiffs' intentional misrepresentation allegations are too general. In terms of
7 the "who," each of Plaintiffs' allegations regarding intentional misrepresentation refers to at least two
8 Defendants or "their agents." See SAC ¶¶ 25-39. As to "what, when and where," Plaintiffs fail to
9 identify or describe specific instances and statements they contend were false or misleading. See id.
10 Plaintiffs' allegations as to fraudulent concealment are not any more detailed than their allegations
11 regarding intentional misrepresentation. See SAC ¶¶ 40-50. The Court therefore concludes Plaintiffs'
12 allegations are insufficient to state an intentional misrepresentation or fraudulent concealment claim
13 with the required particularity. Moreover, because Plaintiffs have already had two opportunities to
14 amend their complaint, and because it is unlikely they can state viable misrepresentation or
15 concealment claims against Defendant Greenlight, the Court **DISMISSES WITH PREJUDICE**
16 Plaintiffs' first and second causes of action.

17     **B.**     **Quiet Title**

18 In their third cause of action against Defendant Greenlight, Plaintiffs seek to quiet title. They
19 allege Defendants claim an interest adverse to Plaintiffs' interest in the Property, in the form of a deed
20 of trust. SAC ¶ 59. According to Plaintiffs, the First Deed of Trust is invalid and void because
21 Plaintiffs have already rescinded the loan. SAC ¶ 60. Plaintiffs also allege the First Deed of Trust is
22 invalid and void because Plaintiffs are entitled to offsets against the promissory note that secures the
23 deed of trust, and these offsets are greater in amount than the sum that would otherwise be due. SAC
24 ¶ 61. In its motion to dismiss, Defendant contends that Plaintiffs failed to allege tender, that the SAC
25 is not verified, and that Defendant has no present interest in the land.

26 California courts have pronounced that in order to maintain a cause of action to quiet title, the
27 mortgagor must allege tender or ability to tender the amounts admittedly borrowed. See Aguilar v.
28 Bocci, 39 Cal. App. 3d 475, 477 (Cal. Ct. App. 1974) (noting that a mortgagor cannot "quiet title

1  without discharging his debt. The cloud upon his title persists until the debt is paid" (citing <u>Burns v.
2  Hiatt</u>, 149 Cal. 617, 620 (Cal. 1906)); <u>Mix v. Sodd</u>, 126 Cal. App. 3d 386, 390 (Cal. Ct. App. 1981)
3  (noting that a mortgagor in possession may not maintain an action to quiet title without paying the
4  debt, even if the debt is otherwise unenforceable).

5        In this case, Plaintiffs have indicated that they "are willing and able and hereby offers [sic] to
6  tender any and all amounts due to any of said Defendants, upon condition that said Defendants do
7  likewise, as said amounts are determined in a judgment by this court." SAC ¶ 60. The Court finds
8  this allegation to be sufficient at this stage of the proceedings. See <u>Ramanujam v. Reunion Mortg.,
9  Inc.</u>, 2010 WL 668036, at **4-5 (N.D. Cal. Feb. 19, 2010) (finding sufficient plaintiff's allegation that
10 he "is ready, willing and able to tender back to defendants whatever amount due them under the Truth
11 in Lending Act, once such amount is determined. Presently, that amount is not known") (internal
12 quotation marks omitted). Accordingly, the Court declines to require Plaintiffs to make an actual
13 tender at this time.

14       The purpose of a quiet title action is "'to finally settle and determine, as between the parties,
15 all conflicting claims to the property in controversy, and to decree to each such interest or estate
16 therein as he may be entitled to.'" <u>Newman v. Cornelius</u>, 3 Cal. App. 3d 279, 284 (1970) (quoting
17 <u>Peterson v. Gibbs</u>, 147 Cal. 1, 5 (1905)). Quiet title claims are governed by Section 761.020 of the
18 California Code of Civil Procedure, which provides that a complaint to quiet title "shall be verified,"
19 and meet certain other requirements.

20       In the present case, Plaintiffs' SAC is not "verified," and that, by itself, may be fatal to their
21 claim. See <u>Anaya v. Advisors Lending Group</u>, 2009 WL 2424037, at *7 (E.D. Cal. Aug. 5, 2009).
22 Additionally, Plaintiffs' allegations, which are directed to all Defendants, do not address the nature
23 of the adverse interest, if any, claimed by Defendant Greenlight. Accordingly, the Court concludes
24 Plaintiffs have not stated a quiet title claim. Moreover, because Plaintiffs have already had two
25 opportunities to amend their complaint, and because it is unlikely they can state viable quiet title claim
26 against Defendant Greenlight, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' third cause
27 of action.

28     **C.**    **Violations of the Truth in Lending Act**

      In their fourth cause of action against Defendant Greenlight, Plaintiffs seek damages under the

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601-1693 (2009), and TILA's implementing regulation (known as "Regulation Z"), 12 C.F.R. § 226.23. Plaintiffs allege Defendant failed make certain disclosures required under TILA and violated Regulation Z's prohibition on asset-based lending. In its motion to dismiss, Defendant contends that Plaintiffs' claim is time barred, that Defendant made all required disclosures, and that Plaintiffs' "pattern and practice" allegations are too conclusory to state a claim.

### 1. Limitations Period

Any action for TILA damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). As a general rule, the statutory period "starts at the consummation of the [loan] transaction." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). Because any claim under Regulation Z is derivative of a TILA claim, the same statute of limitations applies to Regulation Z claims. Here, because Plaintiffs consummated the loan on or about February 28, 2006 and brought suit on August 5, 2009, more than three years later, Plaintiffs' claim for monetary damages would be time barred unless equitable tolling applies.

Equitable tolling may be appropriate "in certain circumstances," such as when a borrower might not have had a reasonable opportunity to discover the fraud or nondisclosures at the time of loan consummation. King, 784 F.2d at 915. District courts have discretion to adjust the limitations period in cases where "the general rule would be unjust or frustrate the purpose of [TILA]." Id. The general applicability of equitable tolling often depends on matters outside the pleadings, and "is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995). When determining whether the statute of limitations has run on a motion to dismiss, a court may only grant the motion "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Id.

In this case, Plaintiffs allege that Defendant's misrepresentations concealed the existence and delayed discovery of the fraud, SAC ¶¶ 23, 74, and that they received only English language loan documents although they are Spanish speakers and the loan negotiations were conducted in Spanish, SAC ¶¶ 15, 23, 74. Plaintiffs allege that as soon as they suspected fraud, they submitted their loan documents for forensic review. SAC ¶¶ 23, 74. Reading the SAC liberally, the Court finds the applicability of equitable tolling in this case depends on factual questions not clearly resolved in the

1  pleadings, specifically, when Plaintiffs had the "reasonable opportunity" to discover the allegedly
2  deficient disclosures. Accordingly, Plaintiffs have pled sufficient facts to support the applicability of
3  equitable tolling.

### 2. Required Disclosures

#### i. *Right of Rescission*

15 U.S.C. § 1635(a) requires creditors to disclose the right of rescission in any consumer credit transaction, "[e]xcept as otherwise provided in this section." Section 1635(e) contains the exempted transactions and provides that the right of rescission does not apply to a "residential mortgage transaction." Likewise, the portion of the Code of Federal Regulations that Plaintiffs cite, 12 C.F.R. § 226.23 requires notice of the right of rescission but states that the right of rescission does not apply to a "residential mortgage transaction." 12 C.F.R. § 226.23(f). Accordingly, the Court concludes Defendant had no duty to disclose the right of rescission.

#### ii. *APR and Amount Being Financed*

The TILA Disclosure, signed and dated by both Plaintiffs on August 9, 2009, clearly discloses the APR and amount being financed. See RJN, Ex. C. Accordingly, the Court concludes Defendant adequately disclosed the APR and amount being financed.

#### iii. *12 C.F.R. § 226.19(b)(2)(viii) Requirements*

Under 12 C.F.R. § 226.19(b)(2)(viii), a lender must disclose "*either* of the following: (A) [a] historical example based on a $10,000 loan amount . . . (B) [t]he maximum interest rate and payment for a $10,000 loan . . . ." Defendant provided, and both Plaintiffs signed, the maximum interest rate and payment for a $10,00 loan. See RJN, Ex. H. Accordingly, the Court concludes Defendant made disclosures in accordance with the requirements of 12 C.F.R. § 226.19(b)(2)(viii).

#### iv. *12 C.F.R. § 226.19(b)(1)-(2) Requirements*

12 C.F.R. § 226.19(b) requires disclosure of the Consumer Handbook on Adjustable Rate Mortgages, or a "suitable substitute." Defendant provided, among other things: the terms of the Subject Note, the TILA Disclosure, the Good Faith Estimate, the Financial Status Affidavit, the Statement of Loan, the Finance Itemization, and the "Interest Only" Disclosure. See RJN, Exs. B-J and N.

Plaintiffs have asserted a single conclusory allegation that Defendant did not disclose the

"CHARM Handbook." They have not made any allegations suggesting Defendants failed to disclose a suitable substitute. Accordingly, the Court concludes Defendant has made disclosures in accordance with the requirements of 12 C.F.R. 226.19(b)(1)-(2). See RJN, Exs. B-J and N.

       v.  *12 C.F.R. § 226.4(d)(2) Requirements*

12 C.F.R. § 226.4(d)(2) references the conditions under which premiums for insurance against loss of or damage to property may be excluded from the finance charge. As Defendant points out in its motion, Plaintiffs have not alleged Defendant made such an exclusion. Moreover, Defendant provided, and both Plaintiffs signed, the Hazard Insurance Disclosure. See RJN, Ex. I. Accordingly, the Court concludes Defendant has complied with 12 C.F.R. 226.4(d)(2).

      3.  "Pattern or Practice" Allegations

Lastly, Plaintiffs allege that Defendant Greenlight violated the provisions of TILA and Regulation Z prohibiting asset-based lending, "by engaging in a pattern or practice of extending such credit to Plaintiffs based on Plaintiffs' collateral rather than considering Plaintiffs' current and expected income, current obligations, and employment status . . ." SAC ¶ 70.

Pursuant to 15 U.S.C. 1639(h), a creditor may not engage in a pattern or practice of extending mortgage credit to consumers "based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." As Defendant argues, Plaintiffs' sole allegation focuses exclusively on the specific dealings between Plaintiffs and Defendant, and therefore does not come close to alleging a "pattern or practice." More fundamentally, the allegation does no more than track the language of the statute. The Court is not bound to accept as true legal conclusions couched as a factual allegations. Iqbal, 129 S. Ct. at 1949-50. Plaintiffs do not allege any specific facts sufficient to "raise [their] right to relief above the speculative level." Twombly, 550 U.S. at 555.

Accordingly, although Plaintiffs' TILA claim is not time barred, Plaintiffs allegations have either been refuted or fall short of stating a plausible claim. Because Plaintiffs have already had two opportunities to amend their complaint, and because it is unlikely they can state viable TILA claim against Defendant Greenlight, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' fourth cause of action.

### D.    Violations of Real Estate Settlement Procedures Act

Plaintiffs' fifth cause of action against Defendant Greenlight seeks damages for violation of the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs allege Defendant failed to provide several required documents: "(a) Initial Good Faith Estimate; (b) Final Good Faith Estimate; (c) Notice of Assignment, Sale or Transfer of Servicing Rights; (d) Escrow Account Disclosure." SAC ¶ 79. In its motion to dismiss, Defendant contends Plaintiffs' RESPA claim is time barred, that there is no private right of action for failure to disclose under RESPA, and that it made an "appropriate good faith estimate" of the terms of Plaintiffs' loans.[5]

RESPA requires mortgage lenders to disclose the costs associated with real estate closings in order to allow consumers to be better informed and avoid unnecessarily high settlement charges caused by certain abusive practices. See 12 U.S.C. § 2601. However, RESPA only provides a private right of action for violations of §§ 2605, 2607 and 2608. See 12 U.S.C. § 2614. Section 2605 concerns the servicing of mortgage loans, § 2607 prohibits kickbacks and unearned fees, and § 2608 prohibits sellers from requiring that title insurance be purchased from any particular title company. See 12 U.S.C. §§ 2605, 2607, 2608.

As Defendant notes, district courts have declined to infer a private right of action under other sections of RESPA. E.g., Kerr v. American Home Mortg. Servicing, Inc., 2010 WL 3743879, at *1 (holding section 2604 does not imply a private right of action); Bloom v. Martin, 865 F. Supp. 1377, 1385 (N.D. Cal.1994) (holding section 2603 does not imply a private right of action), aff'd, 77 F.3d 318 (9th Cir.1996).

Plaintiffs allege Defendant violated § 2607 of RESPA. However, Plaintiffs allege Defendant failed to provide the following documents: "(a) Initial Good Faith Estimate; (b) Final Good Faith Estimate; (c) Notice of Assignment, Sale or Transfer of Servicing Rights; (d) Escrow Account Disclosure." SAC ¶ 79. Of these, the only RESPA disclosure claim that falls under §§ 2605, 2607, or 2608 is the failure to give a "Notice of Assignment, Sale or Transfer of Servicing Rights," which

---

[5] RESPA contains the same applicable statute of limitations as TILA. Therefore, for the reasons stated in Part II-C above, the Court concludes Plaintiffs' RESPA claim is not time barred. The Court nevertheless concludes Plaintiffs have failed to state a RESPA claim, and therefore it need not evaluate Defendant's contention that it made an appropriate good faith estimate of the terms of Plaintiffs' loans.

relates to the duties of a loan servicer under § 2605 of RESPA.

Section 2605 requires a loan servicer to provide disclosures relating to the assignment, sale, or transfer of loan servicing to a potential or actual borrower at the time of the loan application, and at the time of transfer. See 12 U.S.C. § 2605. "Numerous courts have read Section 2605 as requiring a showing of pecuniary damages in order to state a claim." Molina v. Wash. Mut. Bank, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (citation omitted); Reynoso v. Paul Fin., LLC, 2009 WL 3833298, at *7 (N.D. Cal. Nov.16, 2009); Llaban v. Carrington Mortg. Servs., LLC, 2009 WL 2870154, at *4 (S.D. Cal. Sept.3, 2009). Here, Plaintiff has not alleged with any specificity how the alleged nondisclosures resulted in actual harm. See Twombly, 550 U.S. at 555. Accordingly, the Court concludes that Plaintiffs have failed to state a RESPA claim. Moreover, because Plaintiffs have already had two opportunities to amend their complaint, and because it is unlikely they can state a viable RESPA claim against Defendant Greenlight, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' RESPA claim.

### E. Claims Against Remaining Defendants

Plaintiffs initiated this action on August 5, 2009, (Doc. No. 1), and served Defendant Countrywide on October 28, 2009, (Doc. No. 6). However, Countrywide never made an appearance, and Plaintiffs have not pursued any further action against Countrywide. Plaintiffs never served Reconstrust, N.A. On September 8, 2010, the Court scheduled at hearing for September 13, 2010 and ordered Plaintiffs to show cause at that hearing why Defendants Countrywide and Reconstrust, N.A. should not be dismissed for want of prosecution. (Doc. No. 41.) Plaintiffs' counsel did not appear at the hearing. (Doc. No. 43.)

Plaintiffs have therefore failed to show cause why this action should not be dismissed against Countrywide and Reconstrust, N.A. Pursuant to Local Civil Rule 41.1, the Court **DISMISSES WITHOUT PREJUDICE** Defendant Countrywide from this action, and pursuant to Federal Rule of Civil Procedure 4(m), the Court **DISMISSES WITHOUT PREJUDICE** Defendant Reconstrust, N.A.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss and **ORDERS** as follows:

(1) Plaintiffs' claims against Defendant Greenlight are **DISMISSED WITH PREJUDICE**; (2) Plaintiffs' claims against Defendants Reconstrust, N.A. and Countrywide Financial Services are **DISMISSED WITHOUT PREJUDICE**.

<u>Within 30 calendar days from the date this order is issued</u>, if Plaintiffs wish to continue with this case, they must either substitute in another attorney as their counsel or file a notice saying they intend to proceed *pro se*. Plaintiffs' attorney has already told the Court that Plaintiffs do not speak English well, so if they intend to proceed *pro se*, they will need to find someone to help them understand the Court's orders and prepare pleadings. If Plaintiffs wish to substitute another attorney, they should promptly and diligently work to find another attorney to represent them; if they do not, they should not assume they will be given more time to find one.

If Plaintiffs fail to substitute in counsel or file a notice regarding their intention to proceed *pro se*, the Court will dismiss this action without leave to amend.

The Clerk is directed to send a copy of this order to Plaintiffs' counsel at his address as provided in the docket and at his address as provided in the appended letter, as well as to Plaintiffs personally at the address of the Property:

> Oscar Espinoza and Maribel Guardado
> 1427 Riverview Avenue
> El Centro, California 92243

**IT IS SO ORDERED.**

**DATED: October 19, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**